UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ALAN RAY RICK,

Petitioner,

v.

ROBERT MUNDT, Warden,

Respondent.

Civil No. 01-958 (DWF/FLN)

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the undersigned United States Magistrate Judge on Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2241. (Docket No. 1.) Respondent has filed a return contending that the Petition should be dismissed. (Docket No. 7.) The matter has been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). The Petitioner appears *pro-se* and the Respondent appears by Richard Newberry, Assistant United States Attorney. For the reasons discussed below, it is recommended that the Petition for Writ of Habeas Corpus be Summarily Dismissed Without Prejudice, pursuant to Rule 4 of The Rules Governing Section 2254 Cases In The United States District Courts.[1]

## I. BACKGROUND

Petitioner, Alan Ray Rick, Federal Register Number 08741-073, is an inmate at the Federal Correctional Institute ("FCI") in Waseca, Minnesota, serving a 42-month federal prison sentence

[1] Rule 4 provides that "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." Although The Rules Governing Section 2254 Cases are most directly applicable to habeas petitions filed by state prisoners pursuant to 28 U.S.C. § 2254, they also may be applied to habeas cases brought under 28 U.S.C. § 2241. See Rule 1(b).

N 3 0 2001
FILED
RICHARD D. SLETTEN, CL
JUDGMENT ENTD
DEPUTY CLERK

imposed by the United States District Court for South Dakota following conviction for Bank Fraud in violation of 18 U.S.C. § 1344. (See Pet'r's Pet. for Writ of Habeas Corpus ("Pet'r's Pet.), Docket No. 1, at 2.) Shortly after Petitioner's arrival at FCI on July 14, 1999, his Case Manager met with him to help develop a financial plan/contract for payment of his court-ordered restitution.[2] (Resp't's Resp. to Pet'r's Habeas Petition at 5 ("Resp't's Resp. at 5").) His contract was established on July 28, 1999, in the amount of $25 to be paid quarterly.[3] (Id.)

On February 11, 2000, Petitioner began to participate in a Residential Drug Abuse Program ("RDAP").[4] (Id. at 3.) While enrolled in the RDAP, Petitioner incurred two RDAP violations and was advised that further violations may result in his removal from the RDAP; however, he successfully completed the program on November 7, 2000. (Id.)

On March 22, 2001, after Petitioner entered the institutional transitional services program,

---

[2] The Inmate Financial Responsibility Program ("IFRP") was established to help inmates meet their financial obligations, including court-ordered fines and restitution. See § 28 C.F.R. 545.11(a). An inmate refusing to participate in the program would be ineligible for certain privileges such as preferred housing assignment, pay rates and job assignments, among others. See § 28 C.F.R. 545.11(d).

[3] Petitioner consistently met his IFRP obligations from until March 21, 2001. (Pet'r's Decl. at 2.)

[4] This Program was started after Congress passed the Violent Crime Control and Law Enforcement Act of 1994, which gave the Bureau of Prisons (BOP) discretion to reduce an inmate's sentence by up to one year if the inmate successfully completes the RDAP. See 18 U.S.C. § 3621(e)(2)(B). To be eligible for the sentence reduction under the Act, the prisoner must be convicted of a nonviolent offense. (See Resp't's Resp. at 3.) The entire RDAP consists of three components: (1) a unit based residential treatment program lasting between six-to-twelve months (minimum of 500 hours); (2) the institutional phase, which requires participation for a minimum of one hour a month over a twelve month period after successful completion of the unit based program; and (3) the community transitional services lasting up to six months when the inmate is transferred to a Community Corrections Center ("CCC") or to home confinement. (See Resp't's Resp., Attach. A., Program Statement 5330.10.)

he went into IFRP refusal status as he missed a payment under his plan.[5] (Pet'r's Decl. at 3.) Refusal to comply with the provisions of a financial plan ordinarily shall preclude the inmate from receiving an incentive, that is, Community Corrections Center ("CCC") placement, for participation in the RDAP. (Resp't's Resp. at 5.) Accordingly, Petitioner could not receive the incentive of the one year sentence reduction award given to inmates who complete the RDAP. See 18 U.S.C. § 3621(e)(2)(B).

On April 3, 2001, Dr. Fenzel, Chief Psychologist, informed petitioner that he was ineligible for § 3621(e)(2)(B) release due to his IFRP refusal status. (Id. at 6.) What happened next is categorically denied by Petitioner, however, according to Dr. Fenzel, Petitioner became very angry, and belligerent with a threatening and intimidating posture. (Id.) Other staff came to ensure her safety and Petitioner eventually calmed down. (Id.) Despite this behavior, Dr. Fenzel did not remove him from transitional services, which would have affected his § 3621(e) eligibility. (Id. at 7.) The following day, April 4, 2001, Petitioner approached Dr. Fenzel to apologize for his behavior; however, this conversation degenerated into another confrontational episode. (Id.) Due to this inappropriate behavior, Dr. Fenzel decided to remove Petitioner from transitional services on April 6, 2001. (Id.)

Sometime in April or May 2001, Petitioner made a payment of $25 to satisfy or supplement the missed payment.[6] (Pet'r's Decl. at 3.) On June 9, 2001, he made his regular payment and was returned to participating status in the IFRP on June 14, 2001. (Resp't's Resp. at 6.) Petitioner could

---

[5] Both parties' accounts concerning the missed payment and subsequent events vary considerably, however, given this Court's recommendation, we will not determine the factual circumstances surrounding the missed payment.

[6] Both parties provide that the payment was made on different days; however, this Court has been unable to locate any evidence of payment in the record.

not complete the institutional transitional services due to his removal from the program and is ineligible for § 3621(e)(2)(B) early release.

Petitioner filed his present application for habeas corpus relief on May 30, 2001, alleging that he was arbitrarily and capriciously removed from the transitional services component of the RDAP and seeking an order directing the Bureau of Prisons to restore his § 3621(e)(2)(B) early release eligibility, and to be placed back into transitional services. The parties do not dispute that Petitoner failed to exhaust his administrative remedies before filing the instant petition.

## II. DISCUSSION

It is well-settled that a prisoner is required to exhaust his administrative remedies within the correctional system prior to seeking habeas corpus relief in the federal courts. See United States v. Bayless, 940 F.2d 300, 304-05 (8th Cir. 1991); Leighnor v. Turner, 884 F.2d 385, 387-88 (8th Cir. 1989); Merki v. Sullivan, 853 F.2d 867, 869-70 (8th Cir. 1976); Falcon v. U.S. Bureau of Prisons, 52 F.3d 137, 139 (7th Cir. 1995) ("[a] litigant who is seeking injunctive, as opposed to monetary, relief through the federal civil rights laws must exhaust any appropriate administrative remedies, if available"); Irwin v. Hawk, 40 F.3d 347, 348 (1994).

The Eighth Circuit Court of Appeals has identified at least four valuable objectives that are promoted by the exhaustion requirement. First, it helps to ensure a more complete development of the factual record before the matter is brought into court. Secondly, it gives the court the benefit of whatever special knowledge and experience the administrative agency might have to offer. Thirdly, it acknowledges the autonomy of administrative agencies and the authority that Congress has granted to them. Finally, to the extent that claims can be resolved at the administrative level, the exhaustion requirement promotes judicial economy. See Mason v. Ciccone, 531 F.2d 867, 870 (8th Cir. 1976);

see also, McCarthy v. Madigan, 503 U.S. 140, 145 (1992).

In McCarthy v. Madigan, the Supreme Court held that prisoners need not exhaust their administrative remedies when they are seeking only money damages. The Court noted, however, that when the prisoner is seeking injunctive relief, as Petitioner is here, the exhaustion requirement must be satisfied. See 503 U.S. at 153, n. 5; see also, Irwin, 40 F.3d at 348.

The U.S. Bureau of Prisons (BOP) has provided an administrative remedy process for federal prisoners, which is set forth at 28 C.F.R. §§ 542.10-.16.[7] Petitioner attempted to comply with this process by filing a Request for Administrative Remedy at the institutional level. His request was denied on May 29, 2001, and he has not submitted an appeal to the regional office or central office pursuant to 28 C.F.R. §§ 542.10-16. Petitioner evidently recognizes that this administrative remedy process is available to him, but he claims that he is not required to exhaust administrative remedies if doing so would be futile. (Pet'r's Traverse at 3.)

It is true that prisoners may be excused from the exhaustion requirement if they are able to demonstrate that it would be futile to pursue administrative relief. See Mason, 531 F.2d at 871; McCarthy, 503 U.S. at 147-48. Here, however, Petitioner has offered nothing more than a one-sentence conclusory assertion that it would be futile for him to pursue his administrative remedy when the previous Request was denied pursuant to an official BOP policy, Program Statement 5330.10. Petitioner has failed to cite any Eighth Circuit case law supporting his position and there

---

[7] The regulations prescribe four steps that must be taken to satisfy the exhaustion requirement: (i) an inmate must first present his claim informally to an appropriate prison staff member, by filing a request for informal resolution; (ii) if the claim is not resolved to the inmate's satisfaction, he must then present a written claim to the warden; (iii) if the prisoner is not satisfied with the warden's response, he must appeal to the Regional Director; and (iv) if still dissatisfied, the prisoner must take a final appeal to the General Counsel in the Central Office in order to fully exhaust his administrative remedies.

is insufficient evidence in the record for this Court to conclude that his Request for Administrative Remedy was denied pursuant to Program Statement 5330.10. Accordingly, this Court finds that Petitioner has not shown sufficient cause to excuse him from making use of the administrative remedies that are available to him under BOP regulations. Therefore, he must exhaust those remedies before he can seek judicial relief on his current claims.[8]

Because it plainly appears on the face of the petition that Petitioner is not presently entitled to the relief that he is seeking, his petition shall be summarily dismissed pursuant to Rule 4 of The Rules Governing Section 2254 Cases. The petition will be dismissed without prejudice, however, so that Petitioner can return to federal court if he is dissatisfied with the results of the administrative remedy process.

---

[8] Additionally, administrative remedies need not be exhausted in cases of "special urgency." See Willis v. Ciccone, 506 F.2d 1011 (8th Cir. 1974) (administrative remedies must be exhausted before petition for writ is filed except in the "most unusual circumstances") and Baily v. Ciccone, 420 F.Supp. 344 (8th Cir. 1976) (pendency of petitioner's claimed date of discharge created case of "special urgency" justifying waiver of administrative remedy exhaustion requirement).

The Court is persuaded that Petitioner's situation does not constitute a case of "special urgency" justifying the waiver of the administrative exhaustion requirement.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for habeas corpus relief under 28 U.S.C. § 2241 (#1) be **DISMISSED WITHOUT PREJUDICE**.

Dated: Nov. 29, 2001

FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500